[No. 4922–1.   Division One.   July 31, 1978.]

FARMERS HOME MUTUAL INSURANCE COMPANY, *Appellant,*
v. INSURANCE COMPANY OF NORTH AMERICA,
*Respondent.*

*Skeel, McKelvy, Henke, Evenson & Betts, John C. Patterson,* and *Ingrid W. Hansen,* for appellant.

*Foulds, Felker & Gelfand* and *Gerald W. Gelfand,* for respondent.

DORE, J.—This case concerns the coverage of a protection and indemnity (hereafter P & I) clause in a yacht insurance policy.

FACTS

Farmers Home Mutual Insurance Company insured Mr. and Mrs. Robert Lindrud under a homeowner's policy which covered bodily injury occurring on their Mercer Island property. Insurance Company of North America (INA) insured the Lindruds under a yacht policy containing a P & I clause which stated:

> If the assured shall by reason of his interest in the insured yacht become liable to pay and shall pay any sum or sums in respect of any responsibility, claim, demand, damages or reasonable expense arising from or occasioned by any of the following matters or things during the currency of this policy in respect of the yacht hereby insured, that is to say: . . . bodily injury . . .

The Lindruds' yacht was usually moored at a Lake Washington dock located on the Mercer Island property insured by Farmers.

On August 6, 1973, Mr. and Mrs. Clifford Thorson went on a cruise accompanied by the Lindruds. Upon returning to the Linruds' dock, Mr. Lindrud and Mr. Thorson secured the mooring lines and then talked on the shore near the slip for the yacht. After 20 or 30 minutes, Mr. Lindrud returned to the vessel to check whether the switches on the vessel had been turned off.

During this time, their wives remained on the yacht and cleaned the galley. Mr. Thorson was nearby when they were ready to leave, and he extended his hand to assist Mrs. Lindrud step down a ladder located on the side of the boat. As she stepped onto the pier, Mr. Thorson stepped back into a utility well which had been left uncovered. He fell and injured a rib and a finger.

The utility well was located on a 5–foot pier extending over the water from a concrete bulkhead. When the yacht was moored, one alighted from it by climbing down a ladder onto the edge of the bulkhead next to the utility well.

Thorson filed a verified complaint for personal injuries which did not mention the yacht nor the activities at the

818

end of the cruise. He only alleged he fell off a dock situated on the Lindruds' property and that

said fall was due entirely to a dangerous and hazardous condition on the defendants' premises and to the negligence of defendant Robert M. Lindrud in maintaining the same.

Farmers defended the lawsuit and incurred settlement costs, including attorney's fees, totalling $2,301.44. INA refused to defend or pay any part of the settlement on the ground that its policy did not cover this accident.

Farmers brought this action against INA to recover its settlement costs. Farmers alleged that INA's yacht policy covered the accident, and both parties agreed that if the P & I clause in the yacht policy applied to this loss, INA had primary coverage and must reimburse Farmers.[1] Both parties sought summary judgment on the agreed facts. The trial court concluded that the yacht policy did not cover the loss, and summary judgment was entered for INA. Farmers appeals.

ISSUE

The sole issue is whether the P & I clause of the yacht policy covered the Lindruds in a suit for damages arising from injuries suffered when a guest aboard the yacht stepped into an open utility well on the Lindruds' dock while assisting Mrs. Lindrud to disembark from the yacht.

DECISION

■ INA contends that Thorson's complaint only alleged facts tending to show a defective condition on the dock and, therefore, it had no duty to defend the lawsuit. The duty to defend is determined by the allegations in the complaint, but when as here, they inadequately describe the character

---

[1]INA's P & I clause was covered by a "pro rata" provision which prevails over the "excess clause" in Farmers' policy. *General Ins. Co. of America v. State Farm Ins. Co.*, 75 Wn.2d 200, 449 P.2d 391 (1969). A primary insurer that stands aloof from a pending lawsuit upon the basis of a unilateral but erroneous determination that its policy does not provide coverage must reimburse a secondary insurer for its costs in settling the claim within policy limits. *Western Pac. Ins. Co. v. Farmers Ins. Exch.*, 69 Wn.2d 11, 18, 416 P.2d 468 (1966).

of the claim, the unalleged underlying facts must be examined. *Insurance Co. of North America v. Insurance Co.,* 17 Wn. App. 331, 334, 562 P.2d 1004 (1977). INA's duty to defend and pay requires an analysis of all of the facts and is not limited to those matters recited in the injured party's complaint. *Insurance Co. of North America v. Insurance Co., supra; Yakima Cement Prods. Co. v. Great Am. Ins. Co.,* 14 Wn. App. 557, 563, 544 P.2d 763 (1975).

INA argues that we are bound by federal admiralty law which consists of several cases holding P & I clauses inapplicable to losses incurred under similar circumstances involving commercial vessels. *Lanasse v. Travelers Ins. Co.,* 450 F.2d 580 (5th Cir. 1971), *cert. denied sub nom. Chevron Oil Co. v. Royal Ins. Co.,* 406 U.S. 921, 32 L. Ed. 2d 120, 92 S. Ct. 1779 (1972); *Dow Chem. Co. v. Tug Thomas Allen,* 349 F. Supp. 1354 (E.D. La. 1972); *Employers Mut. Liability Ins. Co. v. Aetna Ins. Co.,* 254 F. Supp. 263 (E.D. Mich. 1966). The United States Supreme Court has never addressed this issue, and no court has considered it in the context of the private, noncommercial use of pleasure craft. We reject INA's argument because, at least in the noncommercial field, there is no well–established federal rule, and without such a rule, the interpretation of marine insurance policies is left to the states. *Wilburn Boat Co. v. Fireman's Fund Ins. Co.,* 348 U.S. 310, 315–21, 99 L. Ed. 337, 343–46, 75 S. Ct. 368 (1955); *Berkeley v. Fireman's Fund Ins. Co.,* 407 F. Supp. 960, 965 (W.D. Wash. 1975).

INA urges us to adopt the logic of the federal cases in our decision. Under their rationale, the act causing the loss herein would be deemed that of the Lindruds in their status as owners of the pier and utility well (rather than as yacht owners) because the yacht was only incidentally connected to the accident. Under this analysis there would be no coverage under a P & I clause which provided reimbursement only for liability incurred by reason of the insured's interest in a vessel.

Farmers argues that the logic of the federal decisions should not be adopted because the P & I clause is fairly

and reasonably susceptible to two different interpretations and is, therefore, ambiguous. *Morgan v. Prudential Ins. Co. of America,* 86 Wn.2d 432, 435, 545 P.2d 1193 (1976). It is Farmers' further contention that the yacht policy could reasonably be construed to protect the yacht owner under the facts of this case.

The federal cases found no ambiguity in similar P & I clauses, and we must not strain to find an ambiguity in INA's policy where there is none. *United Pac. Ins. Co. v. McCarthy,* 15 Wn. App. 70, 73, 546 P.2d 1226 (1976). The argued ambiguity in the P & I clause flows from the difficulty with the meaning of the word "interest". It is a word of the most general meaning whose interpretation depends upon the circumstances in which it is used. *Farmers Ins. Co. v. United States Fidelity & Guar. Co.,* 13 Wn. App. 836, 841, 537 P.2d 839 (1975). We must determine whether the private, noncommercial context in this case reasonably and fairly permits the interpretation of the P & I clause suggested by Farmers. If so, we must adopt it even if the insurer intended another meaning. *Morgan v. Prudential Ins. Co. of America, supra.*

To determine its meaning, the P & I clause must be viewed in light of the entire contract and then be construed in a manner consistent with the apparent object and intent of the parties. If the clause is found to be ambiguous, the intent of the insurer does not control, *Morgan v. Prudential Ins. Co. of America, supra* at 434–35, and it must be given the interpretation that the average man purchasing insurance would give it. *Ames v. Baker,* 68 Wn.2d 713, 716, 415 P.2d 74 (1966).

At the time of the injury, all parties were involved in activities necessary to properly leave the yacht at the end of a cruise. Such activities included docking, securing the mooring lines, cleaning the galley, checking all the switches, and climbing down the ladder attached to the yacht. It was while assisting Mrs. Lindrud as she climbed down the ladder that Mr. Thorson stepped into the open utility well on

the pier. We hold that under these circumstances the owners of a noncommercial yacht would reasonably view their resulting liability as one arising by reason of their "interest" in the insured vessel.

Written decisions concerning pleasure craft are sparse, and marine insurance law has developed largely in the context of commercial shipping interests. California Continuing Education of the Bar, *California Pleasure Boating Law* 347–48 (1963). Commercial shippers have been purchasing P & I insurance for years and are familiar with the extent of its traditional coverage. It is unreasonable to expect the noncommercial yacht owner to seek insurance protection for the same reasons, with the same expectations, and with the same knowledge of the marine insurance industry as commercial shippers.

Our decision does not convert the P & I clause into general liability insurance. It merely recognizes that the courts will not blindly apply esoteric commercial marine standards to noncommercial yacht insurance. If ambiguities arise, we must resolve them consistent with the reasonable expectations of the average insured.

We hold that INA's policy provides coverage, and we direct entry of summary judgment for Farmers in the amount of $2,301.44.

Reversed and remanded.

CALLOW, J., concurs.

ANDERSEN, A.C.J. (concurring in the result)—The central issue in this case is not which of two insurance companies should pay, but whether Insurance Company of North America (INA) can properly deny coverage for the loss under its yacht insurance policy. The injured party had been a passenger on the yacht. At the time of his injury, he was engaged in assisting another person to alight from the yacht. His bodily injury claim was therefore within the coverage of INA's yacht insurance policy covering claims or damage "arising from or occasioned by any of the following

matters or things during the currency of this policy in respect of the yacht hereby insured, that is to say: . . . bodily injury . . ."

Reconsideration denied September 6, 1978.

Review denied by Supreme Court February 2, 1979.