29 F.3d 67
 63 USLW 2044
 Spyridon KOLLIAS, Petitioner,
v.
D & G MARINE MAINTENANCE, State Insurance Fund, and
Director, Office of Workers' Compensation
Programs, United States Department of
Labor, Respondents.
B & A MARINE CO. and State Insurance Fund, Petitioners,
v.
Eleftherios GOUVATSOS and Director, Office of Workers'
Compensation Programs, United States Department of
Labor, Respondents.
 Nos. 567, 741, Dockets 89-4114, 92-4109.
 United States Court of Appeals,
Second Circuit.
 Argued Oct. 21, 1993.
Decided July 6, 1994.
 
 Bernard Rolnick, New York City (Jane R. Goldberg, Philadelphia, PA, of counsel), for Spyridon Kollias.
 Joshua T. Gillelan, II, Office of the Sol., U.S. Dept. of Labor, Washington, DC (Thomas S. Williamson, Jr., Sol. of Labor, Carol A. De Deo, Associate Sol., U.S. Dept. of Labor, of counsel), for Director, OWCP.
 Richard A. Cooper, New York City (Amy Levitt, Martin Krutzel, Fischer Brothers, Bernard Rolnick, New York City, Jane R. Goldberg, Philadelphia, PA, of counsel), for D & G Marine Maintenance, State Ins. Fund and B & A Marine Co.
 Before: MESKILL, PIERCE and MAHONEY, Circuit Judges.
 MESKILL, Circuit Judge:
 
 
 1
 These petitions for review require us to determine whether the Longshore and Harbor Workers' Compensation Act (LHWCA), 33 U.S.C. Secs. 901-950, applies to injuries sustained on the high seas. In Docket No. 89-4114 (Kollias case), petitioner Spyridon Kollias petitions for review of a final order of the Benefits Review Board (Board) denying his claim for LHWCA benefits. The Board based its denial of benefits on the ground that Kollias' injury had occurred on the high seas, which is not a statutorily covered situs as defined in the coverage provision of the LHWCA, 33 U.S.C. Sec. 903(a) (section 3(a)). In Docket No. 92-4109 (Gouvatsos case), petitioner B & A Marine Co. (B & A Marine) petitions for review of a final order of the Board granting LHWCA benefits to B & A Marine's employee, respondent Eleftherios Gouvatsos. The Board granted Gouvatsos' claim for benefits on the ground that Gouvatsos' injury, which had occurred on the high seas, was covered by the LHWCA because the phrase "navigable waters of the United States" in section 3(a) includes the high seas. We grant Kollias' petition and reverse the Board's denial of benefits; we deny the petition in the Gouvatsos case and affirm the Board.
 
 BACKGROUND
 Kollias Case
 
 2
 Kollias, an employee of respondent D & G Marine Maintenance (D & G Marine), was injured while working as a repairman on the T.T. WILLIAMSBURGH (WILLIAMSBURGH). Kollias' injury occurred during a voyage from Galveston, Texas, to Long Beach, California. At the time of the injury, the WILLIAMSBURGH was on the high seas, which have been defined as those waters beyond the territorial waters of the United States, which extend three miles from the coast. See Moragne v. States Marine Lines, 398 U.S. 375, 397-98, 90 S.Ct. 1772, 1786, 26 L.Ed.2d 339 (1970); United States v. Hilton, 619 F.2d 127, 131 n. 1 (1st Cir.), cert. denied, 449 U.S. 887, 101 S.Ct. 243, 66 L.Ed.2d 113 (1980); Cove Tankers Corp. v. United Ship Repair, 528 F.Supp. 101, 105 (S.D.N.Y.1981) (Cove Tankers I ), aff'd on other grounds, 683 F.2d 38 (2d Cir.1982) (Cove Tankers II ). After Kollias' injury, the WILLIAMSBURGH made an unscheduled stop in Curacao and traveled through the territorial waters of other foreign nations on an unscheduled basis.
 
 
 3
 Kollias sought compensation for his injury from D & G Marine pursuant to section 4(a) of the LHWCA, which provides that "[e]very employer shall be liable for and shall secure the payment to his employees of the compensation payable under [the LHWCA]." 33 U.S.C. Sec. 904(a). D & G Marine's compensation insurer, State Insurance Fund (Fund), was also a party to the action.
 
 
 4
 After a hearing, an administrative law judge (ALJ) of the United States Department of Labor denied Kollias' claim on the ground that Kollias' injury had not occurred on a covered situs, which is defined in section 3(a) as "upon the navigable waters of the United States (including any adjoining pier, wharf, dry dock, terminal, building way, marine railway, or other adjoining area customarily used by an employer in loading, unloading, repairing, dismantling, or building a vessel)." The parties did not dispute that Kollias met the LHWCA's status requirement, that is, that he satisfied the statutory definition of "employee." 33 U.S.C. Sec. 902(3) (section 2(3)). Although the ALJ made no factual findings with respect to Kollias' citizenship, the WILLIAMSBURGH's country of registry, or the location of D & G Marine, the parties appear to agree that Kollias is a New York resident, D & G Marine is based in New York, and the WILLIAMSBURGH is an American flag ship. We will assume, without deciding, that these representations are accurate.
 
 
 5
 Kollias appealed to the Board, which affirmed. In its decision, the Board noted that Kollias had received state workers' compensation benefits paid voluntarily by D & G Marine and that the parties had agreed that state workers' compensation coverage would be available to Kollias if he were not covered under the LHWCA.
 
 
 6
 Kollias then filed a petition for review in this Court. This Court received full briefing and heard oral argument on May 31, 1990. The Court then remanded the case to the Board for further factual findings and retained jurisdiction. 909 F.2d 1473. The questions put to the Board were: (1) was the WILLIAMSBURGH's stop in Curacao unscheduled, and (2) did the WILLIAMSBURGH travel or was it scheduled to travel through other foreign territorial waters. After the Board provided answers to these questions, the parties submitted supplemental briefs relating to the new findings and presented further oral argument on October 21, 1993. The Director of the Office of Workers' Compensation Programs of the Department of Labor (Director), who is charged by the Secretary of Labor with administering the LHWCA, has participated in the Kollias case in this Court as a respondent and supports Kollias' position.Gouvatsos Case
 
 
 7
 Gouvatsos, an employee of B & A Marine, a New York ship repair company, was injured while working as a repairman and supervisor on the AMOCO CREMONA, a ship of Bermudian registry. At the time of Gouvatsos' injury, the AMOCO CREMONA was on the high seas during a return voyage from Bagaritos, Mexico, to Galveston Roads, Texas. The record does not reveal Gouvatsos' citizenship or residence, but the Director represents that Gouvatsos is American. For purposes of this case, we assume that this representation is accurate.
 
 
 8
 Gouvatsos sought compensation for his injury from B & A Marine pursuant to the LHWCA. The Fund, B & A Marine's compensation insurer, was an additional party to the action. The parties agreed that the sole issue presented by Gouvatsos' claim was whether his injury had occurred on a statutorily covered situs for purposes of section 3(a) of the LHWCA. After receiving written submissions, an ALJ of the Department of Labor granted Gouvatsos' claim for benefits. B & A Marine and the Fund appealed to the Board, which affirmed. B & A Marine and the Fund then petitioned for review in this Court. The Director has participated in the case in this Court as a respondent and supports Gouvatsos' position.
 
 Issues on Appeal
 
 9
 The Director and the claimants generally contend that the LHWCA applies to the high seas and, therefore, provides a remedy for the claimants' injuries. More specifically, they assert that the presumption against extraterritorial application of statutes does not bar the application of the LHWCA to the high seas in these cases.[1] In addition, the Director argues that its construction of the LHWCA is entitled to deference. The employers and the Fund (collectively "the employers") contend, on the other hand, that the presumption against extraterritoriality precludes the application of the LHWCA to the high seas and that the Court should not defer to the Director's interpretation of the jurisdictional scope of the statute.
 
 DISCUSSION
 I. Presumption Against Extraterritoriality
 
 10
 The claimants' and Director's contentions that the claimants are entitled to relief under the LHWCA rest on the premise that the LHWCA may be applied extraterritorially, that is, beyond the territorial jurisdiction of the United States. According to recent Supreme Court pronouncements, however, we must presume that Congress intended its enactments to apply only within the territorial jurisdiction of the United States, unless the legislation reflects a contrary intent. See Smith v. United States, --- U.S. ----, ----, 113 S.Ct. 1178, 1181, 122 L.Ed.2d 548 (1993); EEOC v. Arabian Amer. Oil Co., 499 U.S. 244, 248, 111 S.Ct. 1227, 1230, 113 L.Ed.2d 274 (1991) (Aramco ). The presumption against extraterritorial application of statutes embodies several important policies. For example, it "protect[s] against unintended clashes between our laws and those of other nations which could result in international discord." Aramco, 499 U.S. at 248, 111 S.Ct. at 1230. Moreover, the presumption recognizes that Congress "is primarily concerned with domestic conditions." Foley Bros. v. Filardo, 336 U.S. 281, 285, 69 S.Ct. 575, 577, 93 L.Ed. 680 (1949). Accordingly, "[w]e assume that Congress legislates against the backdrop of the presumption against extraterritoriality." Aramco, 499 U.S. at 248, 111 S.Ct. at 1230.
 
 A. Applicability of the Presumption
 
 11
 We must begin our analysis by considering whether the presumption against extraterritoriality applies at all with respect to the LHWCA. The Director and Kollias assert a host of arguments against the applicability of the presumption in this context. None of these arguments is persuasive.
 
 
 12
 First, the Director and Kollias contend that neither of the two primary considerations underlying the presumption--avoidance of international discord and Congress' focus on domestic matters--is implicated here. See Aramco, 499 U.S. at 248, 111 S.Ct. at 1230. With respect to the potential for international discord, they assert that there is no such potential created by application of the LHWCA to the high seas because the choice of law analysis in Lauritzen v. Larsen, 345 U.S. 571, 583-90, 73 S.Ct. 921, 928-32, 97 L.Ed. 1254 (1953), adequately accounts for foreign interests. The Supreme Court has recently held, however, that the presumption against extraterritoriality, which embodies numerous policies, applies even if the potential for international discord is weak or nonexistent. See Sale v. Haitian Centers Council, --- U.S. ----, ----, 113 S.Ct. 2549, 2560, 125 L.Ed.2d 128 (1993); Smith, --- U.S. at ---- n. 5, 113 S.Ct. at 1183 n. 5.
 
 
 13
 With respect to the second primary consideration underlying the presumption--Congress' focus on domestic matters--the Director and Kollias assert that maritime legislation, such as the LHWCA, naturally applies extraterritorially and that Congress does not, therefore, in the maritime context, legislate against the backdrop of the presumption against extraterritoriality. They conclude that maritime legislation is not subject to the presumption. In support of this argument, they rely primarily on United States v. Bowman, 260 U.S. 94, 98, 43 S.Ct. 39, 41, 67 L.Ed. 149 (1922), in which the Supreme Court held that a criminal statute prohibiting conspiracy to defraud a corporation in which the United States is a stockholder applied extraterritorially, despite Congress' failure to indicate that the statute should be so applied. In Bowman, the Court explained that, if a statute is to be applied extraterritorially, "it is natural for Congress to say so in the statute, and failure to do so will negative the purpose of Congress in this regard." Id. at 98, 43 S.Ct. at 41. The Bowman Court then noted, however, that "the same rule of interpretation should not be applied to criminal statutes which are, as a class, not logically dependent on their locality for the Government's jurisdiction, but are enacted because of the right of the Government to defend itself against obstruction, or fraud wherever perpetrated." Id.
 
 
 14
 Despite the Director's and Kollias' claim that the LHWCA is "not logically dependent on [its] locality for the Government's jurisdiction," we find Bowman unpersuasive with respect to the LHWCA. The Supreme Court's recent discussions of the presumption against extraterritoriality, none of which mentions Bowman, seem to require that all statutes, without exception, be construed to apply within the United States only, unless a contrary intent appears. See, e.g., Smith, --- U.S. at ---- & n. 5, 113 S.Ct. at 1183 & n. 5; Aramco, 499 U.S. at 248, 111 S.Ct. at 1230. At best, therefore, the holding in Bowman should be read narrowly so as not to conflict with these more recent pronouncements on extraterritoriality. Reading Bowman as limited to its facts, only criminal statutes, and perhaps only those relating to the government's power to prosecute wrongs committed against it, are exempt from the presumption. Bowman, 260 U.S. at 98, 43 S.Ct. at 41; cf. United States v. Larsen, 952 F.2d 1099, 1100-01 (9th Cir.1991) (applying Bowman to hold that 21 U.S.C. Sec. 841(a)(1) may be applied extraterritorially). Under that narrow reading of Bowman, the LHWCA is subject to the presumption against extraterritoriality.
 
 
 15
 The Director and Kollias further contend that the presumption does not apply to the LHWCA because it does not apply to the Jones Act, 46 U.S.C.App. Sec. 688. The Director states that the presumption against extraterritoriality is relevant to the LHWCA only if "the extraterritorial application of the LHWCA is subject to construction under different principles than those applied to the Jones Act in Lauritzen." We are not persuaded.
 
 
 16
 Even assuming that the Jones Act and the LHWCA should be treated identically in this respect, it is not clear that the presumption against extraterritoriality is inapplicable to the Jones Act. The parties cite no cases holding that the Jones Act is exempt from the presumption, nor have we found any. Rather than establishing that the Jones Act is not subject to the presumption, the Director and Kollias cite Lauritzen, 345 U.S. at 583-90, 73 S.Ct. at 928-32, which discusses the choice of law analysis appropriate in maritime tort cases in which the Jones Act or general maritime law is invoked. See Romero v. International Terminal Operating Co., 358 U.S. 354, 382, 79 S.Ct. 468, 485, 3 L.Ed.2d 368 (1959) (although Lauritzen itself was a Jones Act case, its choice of law analysis also applies in cases invoking "general maritime principles of compensation for personal injury"). The choice of law analysis in Lauritzen is, however, unrelated to the presumption against extraterritoriality; indeed, to hold that the LHWCA is subject to the presumption is to say nothing about whether Lauritzen applies in the LHWCA context. Accordingly, we reject the Director's and Kollias' contention that Jones Act cases require exemption of the LHWCA from the presumption against extraterritoriality.
 
 
 17
 Finally, Kollias asserts that the presumption against extraterritoriality does not apply in his case because application of the LHWCA would not be extraterritorial at all. He contends that, because he was injured on an American flag vessel and because the law of the flag governs the internal affairs on a vessel, see McCulloch v. Sociedad Nacional de Marineros de Honduras, 372 U.S. 10, 21, 83 S.Ct. 671, 677, 9 L.Ed.2d 547 (1963), the WILLIAMSBURGH was in effect a United States territory as it traveled across the high seas. This argument is unpersuasive. First, the law of the flag does not necessarily govern shipboard conduct; in the Jones Act context, for example, the Lauritzen analysis provides a guide to determining the applicable body of law. See, e.g., Hellenic Lines v. Rhoditis, 398 U.S. 306, 308-09, 90 S.Ct. 1731, 1733-34, 26 L.Ed.2d 252 (1970) (applying Lauritzen to determine that United States law governs maritime tort case in which Greek seaman with Greek employment contract is injured on Greek flag vessel while in a United States port, but employer's base of operations is in the United States). Although no case has previously held that Lauritzen applies in cases in which the LHWCA is invoked, we are confident that the Lauritzen analysis or another choice of law analysis would be used to determine the applicable body of law in such cases. Cf. Romero, 358 U.S. at 382, 79 S.Ct. at 485 (Lauritzen analysis applies when general maritime law, not Jones Act, is invoked). Indeed, it would be particularly inappropriate automatically to apply the law of the flag in LHWCA cases because, under the LHWCA, the shipowner is an irrelevant party. Compare 33 U.S.C. Sec. 904(a) (employer is liable for LHWCA compensation) with, e.g., Lauritzen, 345 U.S. at 574, 73 S.Ct. at 924 (Jones Act claim against shipowner). The premise of Kollias' argument, that United States law applies to all United States flag ships, is thus unpersuasive.
 
 
 18
 In any case, the concept of extraterritoriality does not refer to the body of law that governs the dispute; if it did, extraterritorial application of United States statutes would be an impossibility because any place where United States law governed a particular dispute would be considered United States territory. Accordingly, we decline to characterize the WILLIAMSBURGH as a kind of floating United States territory, where application of the LHWCA would not be extraterritorial.
 
 
 19
 For the above reasons, we are not persuaded that the LHWCA is exempt from the generally applicable presumption against extraterritoriality. The LHWCA may not be applied on the high seas, therefore, in the absence of a sufficiently clear indication that Congress intended extraterritorial application of the statute. We now proceed to determine whether such an indication appears.
 
 B. Overcoming the Presumption
 1. Standard
 
 20
 In Aramco, the Court stated that the presumption is not overcome unless there appears " 'the affirmative intention of the Congress clearly expressed.' " 499 U.S. at 248, 111 S.Ct. at 1230 (quoting Benz v. Compania Naviera Hidalgo, S.A., 353 U.S. 138, 147, 77 S.Ct. 699, 704, 1 L.Ed.2d 709 (1957)). In determining that the presumption was not overcome with respect to Title VII, the Aramco Court considered both the language contained in the statute and the absence of certain provisions, such as one addressing conflicts with foreign laws. Id. at 248-56, 111 S.Ct. at 1230-34. The Aramco Court also noted that the interpretation of Title VII by the Equal Employment Opportunity Commission (EEOC), one of the two agencies with primary responsibility for enforcing Title VII, was entitled only to limited deference because the EEOC is not empowered to issue rules and regulations interpreting Title VII and because the EEOC had previously expressed inconsistent views on the extraterritorial application of Title VII. Id. at 258, 111 S.Ct. at 1235 (citing Skidmore v. Swift & Co., 323 U.S. 134, 140, 65 S.Ct. 161, 164, 89 L.Ed. 124 (1944)). The Court concluded that "even when considered in combination with petitioners' other arguments, the EEOC's interpretation is insufficiently weighty to overcome the presumption against extraterritorial application." Id.
 
 
 21
 The Aramco dissent and some commentators have interpreted the majority opinion in Aramco as setting forth a "clear statement" rule, such that the presumption against extraterritoriality cannot be overcome absent a clear statement in the statute itself. See id. at 261, 111 S.Ct. at 1237 (Marshall, J., dissenting); see, e.g., The Supreme Court, 1990 Term--Leading Cases, 105 Harv.L.Rev. 177, 370 (1991) (instead of "importing ... the clear statement rule into the extraterritoriality context, ... the [Aramco ] Court should have consulted Title VII's legislative history and employed [a] balancing test"). If the presumption against extraterritoriality were a clear statement rule, reference to legislative history and other extrinsic indicia of congressional intent, including administrative interpretations, would be prohibited. In Aramco itself, however, the Court considered the EEOC's interpretation of Title VII. Aramco, 499 U.S. at 258, 111 S.Ct. at 1235. Moreover, the Supreme Court has made clear since Aramco that reference to nontextual sources is permissible. For example, in Haitian Council Centers, the Supreme Court analyzed whether section 243(h) of the Immigration and Nationality Act of 1952 applied extraterritorially by looking to "all available evidence about the meaning of Sec. 243(h)." --- U.S. at ----, 113 S.Ct. at 2562. Indeed, in considering the impact of an amendment to the statute, the Court noted that "[n]ot a scintilla of evidence of such an intent [for extraterritorial application] can be found in the legislative history" and concluded that section 243(h) did not apply extraterritorially. Id. at ----, 113 S.Ct. at 2561-62.
 
 2. Application
 
 22
 With these guidelines in mind, we consider whether the LHWCA contains a sufficiently clear indication of congressional intent to apply the statute extraterritorially. We conclude that it does.
 
 
 23
 First, the administration section of the LHWCA, located in section 39, provides for the establishment of compensation districts that cover the high seas and, therefore, expressly contemplates coverage of injuries sustained on the high seas. 33 U.S.C. Sec. 939(b) (section 39(b)). Section 39(b) provides:
 
 
 24
 Judicial proceedings under sections 918 [collection of defaulted payments] and 921 [review of compensation orders] of this title in respect of any injury or death occurring on the high seas shall be instituted in the district court within whose territorial jurisdiction is located the office of the deputy commissioner having jurisdiction in respect of such injury or death.
 
 
 25
 Id. (emphasis added); see also Reynolds v. Ingalls Shipbuilding Div., 788 F.2d 264, 268 (5th Cir.), cert. denied, 479 U.S. 885, 107 S.Ct. 278, 93 L.Ed.2d 253 (1986); Cove Tankers I, 528 F.Supp. at 108. The emphasized language provides a strong indication that Congress intended the statute to apply extraterritorially. Indeed, section 39(b) is far stronger evidence of an extraterritorial intent than that which was ultimately found insufficient in Aramco.
 
 
 26
 In Aramco, the petitioners contended that Congress' intent that Title VII should apply extraterritorially was evident from the words "employer" and "commerce" in the statute because the definitions of those terms referred to "foreign commerce." The Court held, however, that such broad jurisdictional terms, which form boilerplate language in numerous congressional enactments, are insufficiently clear expressions of intent to overcome the presumption against extraterritoriality. Aramco, 499 U.S. at 251, 111 S.Ct. at 1231. The petitioners also cited Title VII's alien exemption provision, which specifically exempted employers with respect to their employment of aliens outside any state, as evidence of congressional intent that the statute apply extraterritorially. Because there existed, however, plausible reasons for the alien exemption clause other than an intent that the statute should have extraterritorial application, the Aramco Court declined to find that the presumption was overcome by virtue of that provision. Id. at 255, 111 S.Ct. at 1234.
 
 
 27
 By contrast, here, the reference to the high seas in section 39(b) is not merely broad, boilerplate language that arguably contemplates application beyond the territorial jurisdiction of the United States and that might, therefore, indicate an intent that the LHWCA apply extraterritorially. Rather, it is specific language directing the venue for a civil action relating to an injury sustained on the high seas. No plausible explanation exists for section 39(b)'s reference to the high seas other than that Congress intended LHWCA coverage for injuries sustained on the high seas. Accordingly, the language in section 39(b) is persuasive evidence that Congress intended the LHWCA to apply extraterritorially.
 
 
 28
 Second, Congress' overriding purpose in enacting the LHWCA was to provide consistent workers' compensation coverage to eligible longshore and harbor workers, a goal that would be frustrated by limiting the LHWCA to territorial application. Congress' specific aim when it enacted the original version of the LHWCA in 1927 was "to fill the void created by the inability of the States to remedy injuries on navigable waters." Northeast Marine Terminal Co. v. Caputo, 432 U.S. 249, 258, 97 S.Ct. 2348, 2354, 53 L.Ed.2d 320 (1977); see Southern Pacific Co. v. Jensen, 244 U.S. 205, 217-18, 37 S.Ct. 524, 529, 61 L.Ed. 1086 (1917) (holding that state workers' compensation systems could not operate seaward of the water's edge). In 1972, Congress substantially amended the LHWCA to extend the statute's landward reach and thereby to ensure coverage of longshore and harbor workers who might walk between the pier and ship in the course of their work and who would, under the original version of the LHWCA, thereby have walked in and out of coverage as they crossed the "Jensen line." See P.C. Pfeiffer Co. v. Ford, 444 U.S. 69, 73, 100 S.Ct. 328, 332, 62 L.Ed.2d 225 (1979); see also Director, OWCP v. Perini North River Assocs., 459 U.S. 297, 316-17 & n. 26, 103 S.Ct. 634, 647 & n. 26, 74 L.Ed.2d 465 (1983) (quoting S.Rep. No. 92-1125, 92nd Cong., 2nd Sess. 13 (1972) (1972 Senate Report); H.R.Rep. No. 92-1441, 92nd Cong., 2nd Sess. 10-11 (1972), reprinted in 1972 U.S.Code Cong. & Ad.News 4698, 4708 (1972 House Report)). A central purpose underlying the LHWCA was thus to create " 'a uniform compensation system' " in which a longshoreman's or harbor worker's coverage did not depend on the precise site of his injury. Perini North River Assocs., 459 U.S. at 317 n. 26, 103 S.Ct. at 647 n. 26 (emphasis added) (quoting 1972 Senate Report at 12-13; 1972 House Report at 10-11).
 
 
 29
 Although an early proposed version of section 3(a) of the 1927 LHWCA expressly provided for coverage of injuries sustained on the high seas, see S.Rep. No. 973, 69th Cong., 1st Sess. 2 (1926), the legislative history of section 3(a) does not fully explain the ultimate exclusion of that provision. One likely explanation, however, is that Congress intended to exclude all seamen from LHWCA coverage and that Congress understood the term "seamen" to encompass all workers employed on a vessel on the high seas. See Calbeck v. Travelers Ins. Co., 370 U.S. 114, 124 n. 13, 82 S.Ct. 1196, 1202 n. 13, 8 L.Ed.2d 368 (1962). The seamen themselves apparently opposed LHWCA coverage, because they preferred the tort recovery available under the Jones Act, 46 U.S.C.App. Sec. 688. To Provide Compensation for Employees Injured and Dependents of Employees Killed in Certain Maritime Employments: Hearing on S. 3170 Before the House Judiciary Comm., 69th Cong., 1st Sess. 177-78 (1926); 68 Cong.Rec. 5410, 5412 (1927). The exclusion of the explicit reference to the high seas in section 3(a) thus appears to have been an effort to exclude seamen, not to exclude extraterritorial application. Accordingly, interpreting the LHWCA to apply on the high seas is not inconsistent with the legislative history of the statute, but rather accords with Congress' intent to expand statutorily covered sites and to provide consistent, uniform coverage. See Reynolds, 788 F.2d at 271; Cove Tankers II, 683 F.2d at 42.
 
 
 30
 Finally, the Director, the policymaker designated by the Secretary of Labor to administer the LHWCA, interprets the LHWCA as overcoming the presumption and as applying extraterritorially. This interpretation apparently has been consistent over time. Although the level of deference due to the Director in this context is not entirely clear, compare Aramco, 499 U.S. at 258, 111 S.Ct. at 1235 ("persuasive value [of EEOC interpretation of Title VII] is limited"), with Director, OWCP v. General Dynamics Corp., 982 F.2d 790, 795 (2d Cir.1992) (reasonable interpretation of LHWCA by Director, who has rulemaking authority, is entitled to deference if the interpretation has been consistent over time), we may, at a minimum, consider the Director's interpretation in combination with indicia of congressional intent. See Aramco, 499 U.S. at 258, 111 S.Ct. at 1235.
 
 
 31
 In light of the express reference to the high seas in section 39(b) of the LHWCA, congressional intent to provide consistent coverage for longshore and harbor workers and the Director's interpretation, we conclude that the presumption against extraterritoriality is overcome in the LHWCA. Accordingly, the statute may be applied beyond the territorial jurisdiction of the United States, including on the high seas.
 
 
 32
 II. "Navigable Waters"
 
 
 33
 Given our conclusion that Congress intended that the LHWCA apply extraterritorially, we interpret the phrase "navigable waters of the United States" in section 3(a) as including the high seas. We thus expand on our previous holding in Cove Tankers II, 683 F.2d at 41, that "navigable waters of the United States" should be read to include the high seas only under certain limited circumstances.
 
 III. Claimants' Entitlement to Benefits
 
 34
 In the cases before us, the injuries of Kollias and Gouvatsos, who both undisputedly meet the definition of "employee" contained in section 2(3), occurred on the high seas.[2] No choice of law issue has been raised by the employers, and we thus conclude that United States law, that is, the LHWCA, is the applicable law. Because the high seas fall within the permissible jurisdictional reach of the LHWCA, the statute covers both claimants' injuries. The Board, therefore, improperly denied Kollias' claim for benefits under the LHWCA and properly granted Gouvatsos' claim.
 
 
 35
 In light of this conclusion, we need not reach Kollias' alternative contention that relitigation of the issue of the LHWCA's coverage of his injury is barred because that issue was resolved in a prior case in which he sought relief pursuant to the Jones Act, 46 U.S.C.App. Sec. 688. See Kollias v. Bay Tankers, 742 F.2d 1441 (2d Cir.) (mem.), cert. denied, 469 U.S. 1073, 105 S.Ct. 567, 83 L.Ed.2d 508 (1984). Moreover, we need not determine whether the Board's findings with respect to Kollias' receipt of and eligibility for state workers' compensation benefits were clearly erroneous, as urged by the Director. Resolution of this question is irrelevant to the ultimate issue of whether Kollias is entitled to LHWCA benefits. See Perini North River Assocs., 459 U.S. at 307-09 & n. 19, 103 S.Ct. at 642-43 & n. 19 (federal and state coverage for injured maritime workers may overlap, and federal coverage is not exclusive in overlapping areas); Sun Ship v. Pennsylvania, 447 U.S. 715, 719-21, 100 S.Ct. 2432, 2435-36, 65 L.Ed.2d 458 (1980) (federal coverage and state coverage for longshore and harbor workers are not mutually exclusive); Calbeck, 370 U.S. at 126-27, 82 S.Ct. at 1203 (an injury may be covered by the LHWCA "whether or not [it] was also within the constitutional reach of a state work[ers'] compensation law"); 33 U.S.C. Sec. 903(e) (providing that any liability imposed under the LHWCA shall be reduced by "any amounts paid to an employee for the same injury, disability, or death for which [LHWCA] benefits are claimed").CONCLUSION
 
 
 36
 In the Kollias case, we grant the petition, reverse the Board's denial of benefits and remand for further proceedings consistent with this opinion. In the Gouvatsos case, we deny the petition and affirm the Board's grant of benefits.
 
 
 
 [1]
 The parties, with the exception of Gouvatsos, addressed the extraterritoriality issue in letter briefs filed at this Court's request after the October 21, 1993, oral argument in these cases
 
 
 [2]
 Because it is undisputed before this Court that both Kollias' and Gouvatsos' injuries occurred on the high seas and that both were "employees" within the meaning of section 2(3), we need not address the Director's assertion that, contrary to the claim of D & G Marine and the Fund, the presumption prescribed in section 20(a) of the LHWCA, 33 U.S.C. Sec. 920(a), applies to factual questions underlying issues of coverage under sections 2(3) and 3(a)