116 P.3d 1024 (2005)
Dennis S. GRENNAN, Appellant,
v.
CROWLEY MARINE SERVICES, INC., Respondent.
No. 55134-5-I.
Court of Appeals of Washington, Division One.
July 25, 2005.
*1025 Robert M. Kraft, Levinson Friedman PS, Seattle, WA, for Appellant.
Vincent Larson, Daniel Gunter, Riddell Williams PS, Seattle, WA, for Respondent.

PUBLISHED IN PART
COX, C.J.
¶ 1 The Longshoreman and Harbor Worker's Compensation Act (LHWCA) was enacted *1026 to create a uniform system to compensate longshoremen and harbor workers for workplace injuries regardless of the situs of the injuries.[1] This underlying purpose is one of the bases that overcomes the presumption that the LHWCA is not to be applied outside the territorial limits of the United States.[2] Accordingly, we hold that the situs of the injuries to Dennis Grennan  off Sakhalin Island, Russia  falls within the coverage of the LHWCA. We also hold that there is no genuine issue of material fact whether Grennan had the status of "seaman" under the Jones Act at the time of his injury. He did not have "seaman" status because he lacked a connection to a vessel in navigation that was substantial both in terms of duration and nature. Rather, Grennan was an "employee" for purposes of and subject to exclusive coverage under the LHWCA.[3] Thus, dismissal of his claims under the Jones Act and under general maritime law was proper.
¶ 2 Finally, the record relating to the sanctions order for alleged discovery violations by Crowley Marine Services fails to reflect the required considerations.[4] We affirm the dismissal orders, vacate the discovery order, and remand for further proceedings consistent with the cases.
¶ 3 Grennan was a long-term employee of Crowley, having worked for the Seattle-based company for over 29 years at the time of his accident. In the summer of 2002, Crowley temporarily assigned him to work on a tug and two barges just off Chayvo Beach, Sakhalin Island, Russia. There, he was involved in transporting materials for the construction of oil facilities. He worked exclusively on the barges and tugs and lived aboard a Crowley tug. According to the record, Russian immigration officials forbade Grennan and the other workers from going ashore.
¶ 4 Specifically, while remaining at all times off the beach, he worked to offload materials from floating Barge 408 to partially beached Barge 420, which served as a temporary dock. In September 2002, while participating in the placement and securing of a ramp from one barge to the other, Grennan's right foot was caught beneath a ramp. His foot and toes were crushed, and his foot had to be amputated.
¶ 5 Grennan timely filed a claim for compensation under the LHWCA, but requested the withholding of payments pending this litigation. Thereafter, he sued Crowley, asserting claims of negligence under the Jones Act (46 U.S.C.App. § 688) and unseaworthiness under general maritime law. Crowley asserted the affirmative defense that Grennan's exclusive remedy was under the LHWCA. As the trial drew near, Grennan moved to strike this affirmative defense on two grounds. First, Grennan argued that he did not meet the LHWCA's "status" requirement because he was a "seaman," not covered by the act, at the time of the accident. Second, Grennan argued that his injury had not occurred at a "situs" covered by the LHWCA  within "navigable waters of the United States," as that term is used in the act. Crowley moved for summary judgment, which the court granted. By separate orders, the court denied Grennan's motion to strike both grounds of the affirmative defense.
¶ 6 Grennan also moved for sanctions of $5,000, claiming that Crowley withheld a document in violation of discovery rules. The court imposed sanctions of $3,000 against Crowley.
¶ 7 Grennan appeals, and Crowley cross appeals the sanctions order.

*1027 LONGSHORE AND HARBOR WORKER'S COMPENSATION ACT

Navigable Waters of the United States
¶ 8 Grennan argues that summary dismissal of his claims was inappropriate because the LHWCA does not apply to his injury. Specifically, he argues that his accident occurred within the territorial waters off Sakhalin Island, Russia, not within "the navigable waters of the United States." Thus, he argues, the situs of his injury is not within the plain words of the LHWCA that specify the intended jurisdictional and geographic scope of the act.[5] We hold that the situs of Grennan's injury is within the LHWCA.
¶ 9 Summary judgment is appropriate where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."[6] We review a trial court's grant of summary judgment de novo, viewing the facts and the reasonable inferences from those facts in the light most favorable to the nonmoving party.[7]
¶ 10 In considering the rights and liabilities arising from injury to a longshoreman working on board a ship in navigable waters, we are governed by federal law as to the substantive issues in the case.[8] The rights and liabilities of the parties are within the full reach of the admiralty jurisdiction and measured by the standards of maritime law.[9] This rule is applicable even though a plaintiff pursues his or her remedy in a state court.[10]
¶ 11 Under the LHWCA, employers are liable for work-related injuries to longshoremen and harbor workers and their estates regardless of fault.[11] The LHWCA is remedial in nature[12] and aims to "encourage the prompt and efficient administration of compensation claims."[13] An employer's LHWCA liability replaces all other liability to which the employer may be subject, unless the employer fails to pay compensation as required.[14]
¶ 12 Simply stated, Grennan argues that "the navigable waters of the United States," plainly excludes coverage of his injury that occurred off Sakhalin Island, Russia.
¶ 13 Two federal circuit courts of appeals have addressed and rejected similar arguments. The Fifth Circuit interpreted the phrase "navigable waters of the United States" as the phrase is used in the LHWCA in Reynolds v. Ingalls.[15] There, a shipfitter was injured during sea trials when the ship he was on began to execute high speed turns.[16] He sued his employer, alleging negligence under both the Jones Act and the LHWCA, unseaworthiness, and general maritime negligence.[17] The district court granted *1028 the employer's motion for summary judgment.[18]
¶ 14 On appeal, Reynolds argued that his injury occurred while the ship was on the "high seas," not within "the navigable waters of the United States," as specified by the LHWCA.[19] Noting that the term "the navigable waters of the United States" was undefined by the LHWCA, the court looked to admiralty cases for its meaning. The court concluded that the term had often been used in conjunction with the term "high seas."[20] The court then stated:
The "high seas," as the term is currently understood, do begin at a line three miles offshore, but it has never been understood that the navigable waters of the United States end there. The "high seas" simply encompass "all parts of the sea that are not included in the territorial sea or in the internal waters of a State." 1 Benedict on Admiralty § 141, at 9-2 (7th ed.). Benedict goes on to explain that "[m]uch of the maritime legislation enacted since 1910 [including the LHWCA] applies to all the navigable waters of the United States without distinction  to the high seas, the coastal waters and sounds and bays, the Great Lakes, the inland rivers and lakes." Id. at 9-46 & n. 8.[21]
¶ 15 The court also found support for a broadened interpretation of the phrase "navigable waters of the United States" in the LHWCA itself in that the administrative section of the act specifically refers to the "high seas" in describing the compensation districts of the Act.[22] Likewise, the definitions section of the LHWCA makes a distinction between "navigable waters" for purposes of coverage while using "territorial waters" to define the United States.[23] According to the court, such wording suggests a distinction between the two, which supports the view that the LHWCA does not cease to operate at the three-mile limit from the shores of the United States.[24] The court also examined the legislative history and policy considerations supporting the conclusion that Congress intended injured longshoreman to be protected by the LHWCA, notwithstanding the chance location of injuries on the high seas.[25]
¶ 16 In Kollias v. D & G Marine Maint.,[26] the Second Circuit Court of Appeals faced the same question: Whether the phrase "the navigable waters of the United States" included the high seas?[27] There, a repairman was injured on a vessel on the high seas.[28] He sought review of the Benefits Review Board's affirmance of the United States Department of Labor's decision that the LHWCA did not apply to injuries on the high *1029 seas. The court reversed.[29]
¶ 17 The Second Circuit concluded that the LHWCA overcomes the presumption against extraterritoriality because the affirmative intention of the Congress is clearly expressed.[30] In short, the court held that Congress intended the LHWCA to apply extraterritorially to cover workplace injuries suffered on the high seas.[31]
¶ 18 The court cited two particularly important reasons to support its conclusion that the LHWCA applies extraterritorially, specifically on the high seas. First, the court stated, ". . . Congress' overriding purpose in enacting the LHWCA was to provide consistent workers' compensation coverage to eligible longshore and harbor workers, a goal that would be frustrated by limiting the LHWCA to territorial application."[32] The LHWCA was enacted "to fill the void created by the inability of the States to remedy injuries on navigable waters."[33] "A central purpose underlying the LHWCA was thus to create `a uniform compensation system' in which a longshoremen's. . . coverage did not depend on the precise site of his injury."[34]
¶ 19 Second, the court noted that the Director of the Office of Workers' Compensation Programs of the Department of Labor (Director) is the policymaker designated by the Secretary of Labor to administer the LHWCA.[35] Apparently, the Director has consistently interpreted the LHWCA to overcome the presumption against extraterritoriality and had consistently applied this principle to the administration of the LHWCA.[36] While not granting any special deference to the interpretation of the Director, the court stated that it was entitled to consider the interpretation in conjunction with other indicia of Congressional intent.[37]
¶ 20 We conclude that the relevant authorities are clear that the phrase "the navigable waters of the United States" includes the high seas for purposes of coverage of workplace injuries by the LHWCA. Thus, Grennan's reliance on Saipan Stevedore Co. v. Director, Office of Workers' Compensation Programs,[38] to argue otherwise is not helpful. But we are unaware of any case in which a federal or state court has decided the precise issue now before us: Whether the LHWCA applies to a workplace injury within the territorial waters of another country?
¶ 21 While we do not believe that any court has decided this precise issue, the Benefits Review Board of the U.S. Department of Labors Office of Workers Compensation Programs has decided a similar issue in Weber v. S.C. Loveland Co.[39]
¶ 22 Grennan submits that the Weber decision is wrong, arguing that Congress limited the geographical reach of the LHWCA "only" to claims occurring within the "navigable waters of the United States." He further argues that this court has greater expertise in construing legislative acts than does the Board. We take a moment to briefly address these challenges before reaching the merits of the argument on the scope of the phrase we construe.
¶ 23 An administrative decision is entitled to respect by this court only if it is *1030 reasonable and reflects the policy underlying the statute.[40] In this case, we conclude that the Boards decision in Weber is both reasonable and reflects the underlying policies of the LHWCA. There, a worker slipped and fell, injuring his back while walking on a catwalk on a barge owned by his employer.[41] At the time of the accident, the barge was in the port of Kingston, Jamaica.[42] The worker became permanently and totally disabled as a result of the injury and sued his employer under the Jones Act.[43] A judge of the United States District Court granted the employer summary judgment, holding the claimant was an employee under the LHWCA, not a Jones Act seaman.[44] There was no appeal from that order.[45] In a separate proceeding, an administrative law judge determined that the claimant was not entitled to benefits under the LHWCA because his injury did not meet the situs requirements of the act.[46] Both the claimant and the employer appealed.[47]
¶ 24 The Board traced the history of the cases developing the law on the subject of coverage under the LHWCA for workplace injuries on the high seas. Among the cases that it mentioned were Reynolds and Kollias. Looking to admiralty cases dealing with extending coverage to those injured in foreign territorial waters, the Board determined that the rationale for extending coverage in those cases applied to the LHWCA.[48] Namely, the enforcement of a uniform system of compensating injured workers that does not turn on the place of injury supports the policy of the Act.[49] Likewise, the term "high seas" is identical in both the LHWCA and the Death on the High Seas Act, indicating Congress intent to treat claims similarly under both acts.[50] Thus, the Board held:
Where, as here, the injury occurs in the territorial waters of a foreign nation and claimant is a citizen of the United States, employer is based in the United States, the ship was under American flag, no choice of law issue was raised by the parties, and claimant meets the status requirement of the Act, we hold that the Longshore Act applies.[[51]]
¶ 25 Here, Grennan was injured offshore while working on barges owned by Crowley. Like Weber, Grennan's injury occurred in the territorial waters of a foreign nation. Grennan, like Weber, is a citizen of the United States and is usually based in the United States. The tug and barge where Grennan temporarily lived and worked were apparently under American flag. Like Weber, we conclude later in this opinion that Grennan meets the status requirements of the LHWCA. No one in this case raises any choice of law issue. Given the fact that Russian immigration officials prohibited Crowley and others working on the barges and tugs from setting foot on shore, and that counsel conceded at oral argument that there is no issue here of a competing compensation system in Russia for Grennan, we seriously doubt there is any choice of law issue. Finally, the purpose of the LHWCA is to provide a system of compensation for injured workers.[52] To deny coverage to a worker injured under the circumstances of this case would seriously undermine the underlying policies of the Act and simply does not make sense.
¶ 26 To summarize, we conclude that Grennans injury meets the situs requirements for exclusive coverage under the LHWCA. The Reynolds, Kollias, and Weber decisions all support the view that the act applies to this situation.

*1031 SEAMAN'S STATUS UNDER THE JONES ACT
¶ 27 Grennan next argues that he was not a longshoreman under the LHWCA at the time of the incident. Specifically, he argues he was a "seaman" and should be afforded a remedy under the Jones Act.[53] We again disagree.
¶ 28 Under the LHWCA, "employee" means:
[A]ny person engaged in maritime employment, including any longshoreman or other person engaged in longshoring operations. . . but such term does not include 
. . .
(G) a master or member of a crew of any vessel; . . . [[54]]
"[T]he question of who is a member of a crew, and therefore who is a seaman, is a mixed question of law and fact. Because statutory terms are at issue, their interpretation is a question of law and it is the court's duty to define the appropriate standard."[55]
¶ 29 In Chandris v. Latsis,[56] the United States Supreme Court formulated a two-part test to determine whether an employee should be treated as a "seaman" under the Jones Act:
[T]he essential requirements for seaman status are twofold. First, as we emphasized in Wilander, "an employee's duties must contribut[e] to the function of the vessel or to the accomplishment of its mission." . . . Second, . . . a seaman must have a connection to a vessel in navigation (or to an identifiable group of such vessels) that is substantial in terms of both its duration and its nature.[57]
¶ 30 With respect to the first prong of the Chandris test, which the Supreme Court noted is "very broad," a plaintiff need only show that he "do[es] the ship's work."[58] "All who work at sea in the service of a ship are eligible for seaman status."[59]
¶ 31 Here, there does not appear to be any dispute over the first prong. Grennan was working on a ship at sea. Rather, the critical issue is whether Grennan satisfies the second prong of the test.
¶ 32 The United States Supreme Court explained that the second prong of the test was designed to separate sea-based maritime workers from land-based employees "who have only a transitory or sporadic connection to a vessel in navigation, and therefore whose employment does not regularly expose them to the perils of the sea."[60] A maritime worker on a ship at sea as part of his employment is not automatically a member of the crew of the vessel within the statutory terms.[61] "The duration of a worker's connection to a vessel and the nature of the worker's activities, taken together, determine whether a maritime employee is a seaman because the ultimate inquiry is whether the worker in question is a member of the vessel's crew or simply a land-based employee who happens to be working on the vessel at a given time."[62] "Land-based maritime workers do not become seaman because they happen to be working on board a vessel when they are injured, and seaman do not lose Jones Act protection when the course of their service to a vessel takes them ashore."[63]
*1032 ¶ 33 Here, there does not appear to be any dispute that Grennan has a connection to a "vessel in navigation." The second part of the test, whether Grennans connection is "substantial in terms of both its duration and its nature" is at issue.
¶ 34 Throughout his 29 years of employment with Crowley, including the time before, during, and after the incident, Grennan considered himself to be a land-based worker covered by the LHWCA. Grennan's own deposition testimony reveals that he was a land-based maritime worker performing longshoreman's duties who happened to be working on board a vessel at Chayvo Beach when he was injured. He specifically stated that during his assignment in Russia, the "actual job description basically is what I always do[,]" only that the "environment was different." Grennan's duties in Russia were nearly identical to what he did in his shore-based longshoremen's job in Seattle. He used the same equipment and performed the same job in Russia as he did in Seattle. Grennan stated he was "working under the crane, doing, driving forklifts, all the same thing[s] I do in Seattle now." The nature of Grennans activity at Chayvo Beach, as it had been in the past, was that of a land-based longshoreman.
¶ 35 Further, Grennan's expert concluded that he was performing longshoring duties while on assignment in Russian waters. The expert formed his opinion by taking a functional approach to what was occurring at the time of the incident, stating:
". . . what he's [Grennan is] doing is what longshoremen do, and what longshoremen do is what he's doing. They run cranes, they pick things up, cargo and objects, off of a vessel onto the shore, and off of the shore onto the vessel, and from one vessel to another vessel . . . This is what longshoring is. I don't know how better to say it, that's what they all do and that was what he [Grennan] was doing, therefore he was longshoring. Whether he thought of himself as a longshoremen, I couldn't say. But a rose is a rose is a rose by any other name."[[64]]
Regardless of the duration of Grennan's connection with the vessel, the nature of his connection with the vessel was that of a land-based worker.
¶ 36 Grennan next argues that conclusions by his supervisors that he was a "member of the crew" and performed seaman's duties create a genuine issue of material fact regarding his seaman status. However, Grennan's own deposition clearly indicates that his work before, during, and after the incident was that of a longshoreman. Furthermore, testimony that Grennan was a part of the crew is insufficient to establish seaman status.[65] "Seaman status does not attach to a worker simply because he is necessary to the vessel's mission at the time of injury."[66] A "transitory or sporadic connection to a vessel in navigation" does not satisfy the nature of duty and duration required to establish seaman status.[67] Accordingly, his supervisor's conclusions do not create a genuine issue of material fact whether Grennan was a seaman for the purposes of the Jones Act while working on the Chayvo project.
¶ 37 Grennan acknowledges that the Jones Act and the LHWCA are mutually exclusive. Thus, he is covered under the latter statute, not the former.

GENERAL MARITIME LAW
¶ 38 Based on his premise that the LHWCA does not apply and that the Jones Act does, Grennan also claims that general maritime law should apply. Because his premise is inaccurate, we must disagree.
¶ 39 33 U.S.C. § 905(a) states, "The liability of an employer prescribed in section 904 of [the LHWCA] shall be exclusive and in place of all other liability of such employer to the employee. . . ."[68]
*1033 ¶ 40 Because the LHWCA controls, Grennan's remedy is limited to a claim under it.[69]
¶ 41 We affirm the summary judgment order and the orders denying Grennans motions to strike Crowleys affirmative defense. We vacate the sanctions order and remand for further proceedings.
¶ 42 The balance of this opinion has no precedential value. Accordingly, pursuant to RCW 2.06.040, it shall not be published.
WE CONCUR: BECKER and BAKER, JJ.
NOTES
[1] See Kollias v. D & G Marine Maintenance, 29 F.3d 67, 74 (citing Director, OWCP v. Perini North River Associates, 459 U.S. 297, 317 n. 26, 103 S.Ct. 634, 74 L.Ed.2d 465 (1983)).
[2] Kollias, 29 F.3d at 74.
[3] 33 U.S.C. § 902(3)(G) The term "employee" means any person engaged in maritime employment, including any longshoreman or other person engaged in longshoring operations, . . . but such term does not include 

. . .
(G) a master or member of a crew of any vessel;. . . .
[4] Rivers v. Washington State Conference of Mason Contractors, 145 Wash.2d 674, 41 P.3d 1175 (2002).
[5] 33 U.S.C. § 903

(a) Disability or death; injuries occurring upon navigable waters of United States
Except as otherwise provided in this section, compensation shall be payable under this chapter in respect of disability or death of an employee, but only if the disability or death results from an injury occurring upon the navigable waters of the United States (including any adjoining pier, wharf, dry dock, terminal, building way, marine railway, or other adjoining area customarily used by an employer in loading, unloading, repairing, dismantling, or building a vessel).
[6] CR 56(c).
[7] Wilson v. Steinbach, 98 Wash.2d 434, 437, 656 P.2d 1030 (1982).
[8] Stanton v. Bayliner Marine Corp., 123 Wash.2d 64, 82-83, 866 P.2d 15 (1993) (citations omitted).
[9] Stanton, 123 Wash.2d at 82-83, 866 P.2d 15 (citations omitted).
[10] Stanton, 123 Wash.2d at 82-83, 866 P.2d 15 (citations omitted).
[11] 33 U.S.C. 904(b).
[12] Potomac Elec. Power Co. v. Director, Office of Workers' Comp. Programs, 606 F.2d 1324, 1327 (D.C.Cir.1979), reversed on other grounds, 449 U.S. 268, 101 S.Ct. 509, 66 L.Ed.2d 446 (1980).
[13] Rodriguez v. Compass Shipping Co., Ltd., 451 U.S. 596, 612, 101 S.Ct. 1945, 68 L.Ed.2d 472 (1981) (citing Potomac Elec. Power Co., 449 U.S. at 282, 101 S.Ct. 509).
[14] 33 U.S.C. § 905(a).
[15] 788 F.2d 264 (5th Cir.1986).
[16] Reynolds, 788 F.2d 264.
[17] Reynolds, 788 F.2d at 266.
[18] Reynolds, 788 F.2d at 266.
[19] Reynolds, 788 F.2d at 266.
[20] The LHWCA does not define the phrase "navigable waters of the United States," but the phrase has been often construed in admiralty cases. Reynolds, 788 F.2d at 268; see, e.g., The Plymouth, 70 U.S. 20, 3 Wall. 20, 33, 18 L.Ed. 125 (1865) (referring to "the high seas, or other navigable waters within admiralty cognizance"); The Eagle, 75 U.S. 15, 8 Wall. 15, 20-21, 19 L.Ed. 365 (1868) ("public navigable waters" include "lakes, and waters connecting them,. . . the high seas, bays, and rivers navigable from the sea"); The Daniel Ball, 77 U.S. 557, 10 Wall. 557, 563, 19 L.Ed. 999 (1871) (waters "constitute navigable waters of the United States within the meaning of acts of Congress . . . when they form in their ordinary condition by themselves, or by uniting with other waters, a continued highway over which commerce is or may be carried on with other States or foreign countries"); U.S. v. The Montello, 78 U.S. 411, 11 Wall. 411, 415, 20 L.Ed. 191 (1870) (water "can only be deemed a navigable water of the United States when it forms. . . a highway" "over which commerce is or may be carried on with other States or foreign countries"); Ex parte Easton, 95 U.S. 68, 5 Otto 68, 72, 24 L.Ed. 373 (1877) ("Public navigable waters . . . of course include the high seas . . ."); Atlantic Transport Co. v. Imbrovek, 234 U.S. 52, 59, 34 S.Ct. 733, 58 L.Ed. 1208 (1914) (referring to "the high seas or other navigable waters").
[21] Reynolds, 788 F.2d at 268.
[22] Reynolds, 788 F.2d at 268.
[23] Reynolds, 788 F.2d at 269.
[24] Reynolds, 788 F.2d at 269-70.
[25] Reynolds, 788 F.2d at 271-72.
[26] 29 F.3d at 74-75.
[27] Kollias, 29 F.3d at 68.
[28] Kollias, 29 F.3d at 69.
[29] Kollias, 29 F.3d at 73.
[30] See EEOC v. Arabian American Oil Co., 499 U.S. 244, 248, 111 S.Ct. 1227, 113 L.Ed.2d 274 (1991) (stating the presumption against extraterritoriality is not overcome unless there appears "the affirmative intention of the Congress clearly expressed") (citation omitted).
[31] Kollias, 29 F.3d at 73.
[32] Kollias, 29 F.3d at 74.
[33] Kollias, 29 F.3d at 74 (citing Northeast Marine Terminal Co. v. Caputo, 432 U.S. 249, 258, 97 S.Ct. 2348, 2354, 53 L.Ed.2d 320 (1977)).
[34] Kollias, 29 F.3d at 74 (citing Perini North River Assocs., 459 U.S. at 317 n. 26, 103 S.Ct. 634 (emphasis added) (quoting 1972 Senate Report at 12-13; 1972 House Report at 10-11)).
[35] Kollias, 29 F.3d at 75.
[36] Kollias, 29 F.3d at 75.
[37] Kollias, 29 F.3d at 75.
[38] 133 F.3d 717 (9th Cir.1998) (analyzing the plain meaning of the LHWCA to determine that the LHWCA applies to the Commonwealth of the Northern Marianas Islands).
[39] 28 BRBS 321, 1994 WL 712512 (DOL Ben.Rev.Bd.) (1994).
[40] Stevens v. Director, Office Workers' Compensation Programs, 909 F.2d 1256, 1257 (1990).
[41] Weber, 1994 WL 712512 at *1.
[42] Weber, 1994 WL 712512 at *1.
[43] Weber, 1994 WL 712512 at *1.
[44] Weber, 1994 WL 712512 at *2.
[45] Weber, 1994 WL 712512 at *2.
[46] Weber, 1994 WL 712512 at *2.
[47] Weber, 1994 WL 712512 at *3.
[48] Weber, 1994 WL 712512 at *9.
[49] Weber, 1994 WL 712512 at *9.
[50] Weber, 1994 WL 712512 at *9.
[51] Weber, 1994 WL 712512 at *9.
[52] Chandris, Inc. v. Latsis, 515 U.S. 347, 356, 115 S.Ct. 2172, 132 L.Ed.2d 314 (1995).
[53] 46 U.S.C. § 688 (removing the legal bar to a seaman's suit for employer negligence, giving seamen the right to file personal injury claims).
[54] 33 U.S.C. § 902(3)(G).
[55] Chandris, 515 U.S. at 369, 115 S.Ct. 2172 (citing McDermott Intern., Inc. v. Wilander, 498 U.S. 337, 356, 111 S.Ct. 807, 112 L.Ed.2d 866 (1991)).
[56] 515 U.S. at 363, 115 S.Ct. 2172.
[57] Chandris, 515 U.S. at 368, 115 S.Ct. 2172 (quoting Wilander, 498 U.S. at 355, 111 S.Ct. 807).
[58] Chandris, 515 U.S. at 369, 115 S.Ct. 2172; Becker v. Tidewater, Inc., 335 F.3d 376, 388 (5th Cir.2003).
[59] Chandris, 515 U.S. at 368, 115 S.Ct. 2172 (quoting Wilander, 498 U.S. at 354, 111 S.Ct. 807) (emphasis in original).
[60] Chandris, 515 U.S. at 368, 115 S.Ct. 2172.
[61] Chandris, 515 U.S. at 363, 115 S.Ct. 2172.
[62] Chandris, 515 U.S. at 370, 115 S.Ct. 2172.
[63] Chandris, 515 U.S. at 361, 115 S.Ct. 2172.
[64] Clerk's Papers at 556.
[65] See Becker, 335 F.3d at 391.
[66] Becker, 335 F.3d at 391 (citing Chandris, 515 U.S. at 358, 115 S.Ct. 2172).
[67] See Chandris, 515 U.S. at 388, 115 S.Ct. 2172.
[68] (Emphasis added.)
[69] See Wilander, 498 U.S. at 351, 111 S.Ct. 807.